NOTICE
Decision filed 04/24/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240167-U

NO. 5-24-0167

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 24-CF-96 |
| | ) | |
| DANTE FREEMAN, | ) | Honorable |
| | ) | Brett N. Olmstead, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court's order granting the State's petition to deny pretrial release is affirmed where the trial court did not abuse its discretion in denying defendant's request to confer with his appointed counsel while the court was issuing its ruling.

¶ 2   Defendant timely appeals the trial court's order denying his pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons we affirm the trial court's order.

1

¶ 3                                    I. BACKGROUND

¶ 4     On January 23, 2024, defendant was charged by information with four counts of predatory criminal sexual assault of a child in violation of section 11-1.40(a)(1) of the Criminal Code of 2012 (720 ILCS 5/11-1.40(a)(1) (West 2022)), all Class X felonies. The same day, the State filed a petition to deny defendant pretrial release. Defendant was appointed counsel and the State's petition was continued until January 25, 2024.

¶ 5     The pretrial investigation report was filed on January 23, 2024, and stated that defendant was 31 years old, divorced, and reported having five daughters. He lived in Rantoul, Illinois, following his father's death three years ago. He stated he had no family in the area. He reported having reliable transportation that would allow him to be present for all court hearings. He had a bachelor's degree and worked full time as a cashier and packer at KFC and was enrolled in truck driving school with 15 hours left until completion. His medical issues stemmed from complications of being shot 17 times. He was scheduled for surgery on February 10, 2024, to remove the bullets. He reported no history of drug abuse or mental health issues.

¶ 6     The report indicated that defendant was currently on probation in Champaign County case No. 22-CF-433 and was on conditional discharge in Champaign County case No. 22-CM-139. Defendant scored a 5 out of a possible 14 on the Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R) which classified him as a level 3 out of 6 risk for possible violations of pretrial release conditions. His criminal history included public indecency/lewd exposure on August 9, 2023, for which he was on conditional discharge and resisting a peace officer from September 27, 2022, for which he received probation. Additional criminal cases included obstructing identification, interference with a report of domestic violence, and domestic assault.

¶ 7    On January 25, 2024, defendant was charged with a fifth count of predatory criminal sexual assault of a child in violation of 11-1.40(a)(1) of the Criminal Code of 2012 (720 ILCS 5/11-1.40(a)(1) (West 2022)), a Class X felony. Prior to the pretrial hearing, the trial court advised defendant as to how the hearings would proceed, and the effect of the orders—whether for conditional release or denial of pretrial release—as well as any consequences related to violation of a pretrial release order. The court stated, "During your hearing, you have the right to speak with your lawyer." The court explained that despite the fact that defendant was appearing by video, he simply needed to raise his hand and speak up to get the court's attention. Thereafter, the court would pause the hearing and put the parties in a private location so defendant could speak with counsel. The court also advised defendant of his appeal rights stemming from any pretrial release order. Defendant's case was called, and he was provided the option of either standing or sitting in front of the monitor. The court noted that defendant's appointed counsel, Ms. Wilson, was in the courtroom.

¶ 8    The court first noted that a fifth charge of predatory criminal assault of a child was filed and read the fifth charge, along with the potential penalties, to defendant. Following the recitation, defendant asked the court if that count would be in the same court and added with the other four. The court answered affirmatively. The State and defense counsel advised the court that they had no additions or corrections to the pretrial investigative report.

¶ 9    The State started its proffer by addressing defendant's criminal history. As to the obstruction of identification case, the State proffered that a public indecency charge was dismissed as part of the plea for obstruction. The facts related to those two charges revealed that defendant went to Walmart, exposed himself to a worker, addressed the size of his penis, and later lied about his name when he was arrested. The State then proffered a second criminal case involving public

3

indecency and the defendant. In that case, defendant stood naked in a window on the route a 13-year-old girl took to get to the bus stop. Defendant would masturbate while the girl walked by. This happened multiple times and eventually the girl took a video of defendant because she knew he was going to do it. The State advised that this incident occurred at the same address where the current charges occurred, and defendant was on conditional discharge for the public indecency case when the current charges were filed.

¶ 10    The State further proffered that in addition to those cases, defendant was charged with a Class 4 felony while on probation in Champaign County case No. 22-CF-423. In that case, defendant fought with officers when they tried to tow his car and defendant ended up injuring one of the officers. Defendant also had another case in which he was charged with public indecency stemming from December 27, 2023. In that case, defendant entered a Dollar General Store and exposed his genitals to the clerk while walking around the store. Police were called and defendant was given notice to appear in court for that case on February 7, 2024.

¶ 11    The State then moved to the current case, which involved incidents stemming from December 2023 through January 2024. The State proffered that the victim in this case was nine years old and her mother was defendant's girlfriend. The victim and her mother lived with defendant. On January 6, 2024, the victim moved to her aunt's house because she had been getting into trouble at school and by living with her aunt would be able to enroll at a different school. The aunt noticed some odd, sexualized behavior, including spooning with another child, so she asked the victim about this. The victim then told her aunt about defendant's actions. The victim later went to a Sexual Assault Nurse Examiner (SANE) for a sexual assault examination. The victim stated that defendant touched her vagina, or penetrated her vagina, with different sex toys. She also stated that defendant left mucus-like stuff on her buttocks. The victim was forced to perform

4

oral sex on defendant and defendant performed oral sex on her. He also showed her pornography on his phone. The victim was able to provide the specific pornographic web address. The victim stated defendant did this to her when her mother was either asleep or in the shower. She stated that defendant threatened to beat her if she told anyone. The victim further stated that the daughter of defendant's ex-girlfriend, who was of similar age, used to visit and similar touching went on with her. A search warrant was executed on the residence and at least one of the sex toys described by the victim was found. The defendant was detained. The victim's mother stated that defendant introduced the sex toys to her as a Christmas present and admitted she had a sex toy similar to the other sex toy described by the victim. She further stated that her daughter came to her with the pornographic websites, and she confronted defendant about it, but he stated it was just an accident and said he left his phone open with the website and the victim happened to pick it up.

¶ 12    The State proffered that defendant was interviewed in custody and provided conflicting statements. He stated that his penis was inoperable, and he could not ejaculate. This was inconsistent with the fact that he fathered seven children.

¶ 13    The State further proffered that the victim was interviewed at the Child Advocacy Center (CAC). She was visibly upset and asked repeatedly if defendant was in jail. She was fearful of him and further stated that defendant made her touch his penis. She also confirmed the sex toys and defendant's threat. Ultimately, the interview had to be stopped because the victim became so emotional.

¶ 14    Finally, the State proffered that when defendant was taken to jail, a baggy containing approximately one gram of powdered cocaine was found hidden in his mouth. After defendant was advised as to the charges, he became suicidal, started smashing walls, and asked to be handcuffed behind his back so he could not harm himself.

¶ 15    Defense counsel advised the court that she had no factual presentation. She only had argument.

¶ 16    The State argued that defendant was a danger to anyone around him, especially young children. He exhibited a pattern of exposing himself to people in public and could not control his sexual behaviors. The victim's statements were corroborated by evidence and other witnesses, and it appeared there would also be another victim. The State argued that this was a nonprobationable charge. The State further argued that defendant was on conditional discharge for a disturbing incident, "not as horrific as the one he's charged with," and was on probation for injuring a police officer when this happened. The State requested the court, for the protection of the public, the victim, the witnesses, and even himself, that defendant be detained.

¶ 17    Defense counsel stated that it wanted the court to take into consideration additional issues related to defendant. Counsel advised that defendant was gainfully employed. He was also the caretaker of his paralyzed mother. He had a brother, but he was an over-the-road truck driver. Counsel stated defendant lived in a different county from the victim and would have no reason to go there any further. Counsel further stated defendant would follow any pretrial conditions imposed by the court. Counsel argued that, with regard to the resisting a peace officer charge, defendant was compliant on probation. He was in school at Parkland College getting his commercial driver's license (CDL). Counsel further stated that while they appreciated the gravity of the charges, defendant was innocent until proven guilty and asked the court to take that into consideration. Defense counsel requested defendant's release with pretrial conditions.

¶ 18    The court then stated it considered the fact presentations, the arguments, and the pretrial investigation report. The court agreed that defendant was presumed innocent and that the current hearing was solely related to the State's petition requesting pretrial detention. The court noted

6

defendant raised his hand and said, "I've started my ruling right now. I'm not gonna pause. I note you just raised your hand." Defendant said, "Oh." The court then stated, "I'm ruling; okay?" Defendant stated, "Okay."

¶ 19    The court then indicated the State had proof that included the alleged victim's statements that were repeated, and fundamentally consistent, to the aunt, SANE, and the CAC interviewer. The facts were also supported by difficulties the child was having in school as well as descriptions of sex toys that were consistent with sex toys later found by police or described by the victim's mother. The court found the State provided clear and convincing evidence that the proof was evident or the presumption great that defendant committed the charged offenses. The court further stated that it was not considering any of the proffer that considered a second victim.

¶ 20    As to dangerousness, the court stated it was considering evidence beyond the offenses charged. The court noted the repeated offenses but further noted that defendant was on felony probation for causing injury to a peace officer and was on conditional discharge for public indecency when the alleged offenses occurred. The court also noted the second charge of public indecency that was dropped as part of the plea and noted defendant's inability to control himself from acting out sexually in an illegal manner. The court also noted the public indecency charge involving exposing himself to a 13-year-old child through a window on a route the child took to catch the bus. The court found defendant was someone who was incapable or unwilling to control his sexual behavior in a manner that was not illegal and therefore, was dangerous.

¶ 21    The court further found that no condition, or combination of conditions, could mitigate defendant's dangerousness, for the community's safety. It acknowledged the contrary evidence but noted the other public indecency charge related to the exposure of defendant's genitals at the Dollar General Store. The court noted that defendant was employed, had people who depended on

7

him, had children of his own, and family to support. It further noted that defendant was also enrolled in a CDL program and had a low-to-medium range score on the pretrial risk assessments. It stated that while defense counsel indicated that defendant would follow a court order with pretrial release conditions, the State showed by clear and convincing evidence that was insufficient. The court denied pretrial release and ordered defendant not to have, or try to have, contact with the victim in the case. The court then read defendant his appeal rights.

¶ 22    After receiving defendant's acknowledgment that he understood his appeal rights, he asked defendant if he had a question. The following exchange occurred:

"THE DEFENDANT: Yes. *** I had raised my question to talk to my attorney before—

THE COURT: Nope.

THE DEFENDANT:—you had—

THE COURT: The first time you did that was when I had already started talking with my ruling, and I was not gonna stop my ruling so that you could—

THE DEFENDANT: When—

THE COURT:—speak with your attorney.

THE DEFENDANT: No. The, the first time—the first time I had did it, the states was talking and when I heard the states talking, I put my hand down because, when I was in the room, I had—heard you tell someone else that you wasn't gonna interrupt the state, so I put my hand down, and then, after he starts talking, you had started talking and (unintelligible), and I had put my hand up, but if it's too late, I understand that.

THE COURT: Well, no. Hold on. I'm gonna make a record of this; okay?

THE DEFENDANT: Yes, sir.

8

THE COURT: I mean, I have people to watch in the courtroom, as well as you, but I'm always turning my eye back to you, and one of the reasons is so I can see that you have—if you have your hand up. I never saw that. I never saw your hand up. Your attorney is placed in the courtroom where she can see the screen, too. She never called to my attention that you ever had your hand up. And the State's here. They can see, too. The State didn't say anything, either.

THE DEFENDANT: Well—

THE COURT: Well, hold on. I'm just explaining for the record—

THE DEFENDANT: Oh, okay.

THE COURT:—the first time I ever saw you raise your hand was when I had started ruling already, and the reason why—

THE DEFENDANT: Yes, sir.

THE COURT: I didn't let—stop and ask you what you were requested is because, at that point, it's too late to request to speak with your attorney. I'm in the middle of ruling. That's why I did that.

THE DEFENDANT: Yes, sir. I, I raised my hand twice. I had raised my hand the first time when the states was talking, and I put my hand down.

THE COURT: All right.

THE DEFENDANT: And then, after the state's talking, you had started talking, and I had tried to raise my hand, but you said we was going into a ruling, so I just kept it down, but if I—if I didn't make it, then I understand, like—

THE COURT: Well, I, I, I've set out the record for what the court's observations were, but did you have any other question?"

9

Thereafter, defendant said he did, but he did not know where to start. He then asked if he would go to court on February 20. The court advised defendant that his preliminary hearing was set for February 14, 2024. Defendant then asked if that was similar to a pretrial hearing. The court told defendant that his attorney would explain more about that, and he would have an opportunity to speak with his attorney.

¶ 23 Defendant then asked if someone could help his mom because she was in the house by herself, and she did not have her phone because he was locked up with her phone. He stated that he tried to reach his brother, but he was on the road. The court asked for the address and defendant provided it. Defendant then stated, "It's—so it's no way I can speak, speak with my attorney at all?" An unidentified speaker stated, "They will call you." The court stated, "Yes, You, you'll have plenty of opportunity to speak with your attorney. I'm just not gonna pause the hearing at this point so you can do that." The defendant stated,

> "So it's—so is there a way that you can just go back and look at when I had my hand up, 'cause I, I raised my hand twice, like, and then—like that just, like, got over—my hand got overruled because the state was talking, and then I put my hand down, but then I raised it back up—"

The court stated, "No. There was never any—" Defendant interrupted stating "and" and the court was also speaking. The court stated,

> "Hold on. The court didn't see you raise your hand, even though I'm regularly checking, and no one in the courtroom, including your attorney, called my attention to you having raised your hand. The first time I saw you ever with your hand up was when I had already started talking with my ruling, so by that—at that time, the hearing was over, and I'm just ruling."

10

Defendant asked, "There, there is no way that you can go back for a, a, a pause, a brief pause to see my hand raised." The court responded, "No." The State requested the court to include the victim's mother as part of the no contact order as well. No objection was raised by defense counsel. The court stated it would and advised defendant that he was not allowed to contact the victim's mother either.

¶ 24    The court issued a written order finding the offense was detainable and defendant posed a real and present threat to the safety of any person or persons or the community, and no condition or combination of conditions could mitigate that dangerousness. In support of finding that defendant committed a detainable offense, and the State proved the proof was evident or the presumption great, as to the charged offense, the order stated,

> "The alleged victim is 9 years old. Defendant Mr. Freeman, who is 31, was her mother's boyfriend and, at the time of the charged offenses, was living with the victim and her mother. The victim reported in an outcry statement to her aunt, and later to a SANE nurse, then later to a CAC interviewer, Mr. Freeman's actions described in the charges. Her account was corroborated by her description of distinctive objects Mr. Freeman used that later were found in the home and described by the victim's mother, and the victim's description of images Mr. Freeman let her see which were confirmed by his statement to the victim's mother, although he claimed the victim's viewing was accidental. They were further confirmed by the victim's distressed and emotional responses and her age-inappropriate sexualized behavior, all of which was consistent with having suffered the trauma of these crimes at her age."

¶ 25    The court further found defendant posed a real and present threat and no condition, or combination of conditions, would mitigate that threat. In support, the order stated,

11

"At the time of the offenses, Mr. Freeman was on Probation for felony Resisting a Peace Officer (causing injury) and Conditional Discharge for Public Indecency. His recent history of being unable or unwilling to control his illegal sexual conduct is[:] In 20-CM-201 he was convicted of Obstructing Identification in a plea resulting in the dismissal of a count of Public Indecency, and the facts involved Mr. Freeman exposing himself to a worker at Wal-Mark while saying 'I have a big dick', then fighting with and injuring an officer. In 22-CM-139 he was convicted of Public Indecency for exposing himself to a 13-year-old girl while he stood in the window of the home where the State now can prove the offenses in this case occurred, and the facts of that case include his repeated exposure to the 13-year-old, who had to walk by the house to reach the school bus, so many times that she finally decided to record video of him on her phone. Before the offenses were charged here, he was issued a notice to appear in February for events on December 27, 2023, when he exposed his genital to a clerk at Dollar General. Mr. Freeman is employed, has his own children and other connections to the community, and is enrolled in a CDL program, but he cannot or will not control his illegal sexual acting out, and his behavior has escalated to targeting children, then to sexual violence. GPS cannot protect every child, he has repeatedly ignored sentencing orders and at this point no conditions of release can mitigate the threat he poses to community safety."

Defendant timely appealed. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023).

¶ 26                                II. ANALYSIS

¶ 27   Pretrial release—including the conditions related thereto—is governed by statute. See Pub. Act 101-652, § 10-255 (eff. Jan. 1, 2023); Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS

5/110-6.1 (West 2022). In order to detain a defendant, the State has the burden to prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and (3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e).

¶ 28    In considering whether the defendant poses a real and present threat to the safety of any person or the community, *i.e.*, making a determination of "dangerousness," the trial court may consider evidence or testimony concerning factors that include, but are not limited to, (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code of Criminal Procedure of 1963 (Code) (*id.* § 110-5). *Id.* § 110-6.1(g).

¶ 29    To set appropriate conditions of pretrial release, the trial court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-

13

5(a). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.*

¶ 30    Our standard of review of pretrial release determinations is twofold. The trial court's factual findings are reviewed under the manifest weight of the evidence standard. *People v. Swan*, 2023 IL App (5th) 230766, ¶ 12. " 'A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " *Id.* (quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)). We review the trial court's ultimate determination regarding the denial of pretrial release for an abuse of discretion. *Id.* ¶ 11. "An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the trial court." *Id.*; see *People v. Heineman*, 2023 IL 127854, ¶ 59. "[I]n reviewing the circuit court's ruling for an abuse of discretion, we will not substitute our judgment for that of the circuit court, 'merely because we would have balanced the appropriate factors differently.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 15 (quoting *People v. Cox*, 82 Ill. 2d 268, 280 (1980)).

¶ 31    Defendant's notice of appeal requests reversal of the trial court's order denying his pretrial release. On the standard notice of appeal form used, every possible issue, except one, had language written below it. However, three of the issues included an "x" in the box to the left of the issue. The issues "checked" claimed: (1) the State failed to meet its burden of proving by clear and

14

convincing evidence that the proof was evident or the presumption great that defendant committed the charged offense; (2) the State failed to meet its burden of proving by clear and convincing evidence that defendant posed a real and present threat to the safety of any persons or the community; and (3) the court erred in determining that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent defendant form being charged with a subsequent felony or Class A misdemeanor.

¶ 32    The superfluous language under each issue was previously addressed in *People v. Davis*, 2024 IL App (5th) 240120, ¶¶ 16-26, and we again remind trial counsel of its ethical obligations related to presenting frivolous issues on appeal. Here, as in *Davis*, the typewritten words provide no specific argument and merely define what is required for clear and convincing evidence and recite applicable sections of the Code. Further, the third issued checked by defendant relates solely to revocation of previously issued pretrial release conditions pursuant to section 110-6 of the Code (725 ILCS 5/110-6 (West 2022)). Our review of the record reveals no such event for this case, and we find the issue has no relevancy in defendant's case.

¶ 33    This court would consider the remaining two issues raised; however, OSAD filed a Rule 604(h) memorandum. In *Forthenberry*, this court held that when a supporting Rule 604(h) memorandum is filed, it becomes "the controlling document for issues or claims on appeal" and the notice of appeal would not be used to "seek out further arguments not raised in the memorandum" unless jurisdiction was raised as an issue. *People v. Forthenberry*, 2024 IL App (5th) 231002, ¶ 42. Other appellate districts have also adopted this holding. See *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22; *People v. Martin*, 2024 IL App (4th) 231512-U, ¶ 59. Here, OSAD's memorandum contains no argument for the issues raised by defendant in his notice of

15

appeal. Accordingly, we hold that the issues initially raised by defendant in his notice of appeal were abandoned by his appellate counsel. *Forthenberry*, 2024 IL App (5th) 231002, ¶¶ 42-44.

¶ 34　Instead of addressing the issues raised by defendant, OSAD argues that defendant was denied his statutory right to consult with counsel before the detention hearing and further contends that defendant's denial was exacerbated by the fact the defendant did not appear in person for the hearing as required by the statute. OSAD concedes neither issue was raised in defendant's notice of appeal but contends the issue is not forfeited because the statute imposed the duty on the court, not defendant or his counsel. Citing *People v. Whitfield*, 217 Ill. 2d 177, 188 (2005), OSAD contends it would be "incongruous to fault defendant for the court's failure to comply with the statute." OSAD further argues, citing *People v. Mezo*, 2024 IL App (3d) 230499, that nothing in the admonitions put defendant on notice that he needed to raise every issue in his notice of appeal and that denial of the right to counsel could be reviewed as second-prong plain error.

¶ 35　In response, the State filed a Rule 604(h) memorandum arguing that defendant waived these issues by failing to raise them in his notice of appeal. In the alternative, the State argues that defendant was not denied the right to consult with counsel prior to the detention hearing, because counsel was appointed two days prior to the hearing. The State further argues that orders issued by the Illinois Supreme Court and orders issued by the Sixth Judicial Circuit Court Judge and Champaign County Court authorized defendant's remote appearance for this appearance.

¶ 36　Before we address the merits of the issues raised, we must first determine whether the issue was waived. " '[W]aiver implies a knowing relinquishment of a right, whereas procedural default refers to the failure to adequately preserve an issue for later appellate review.' " *Whitfield*, 217 Ill. 2d at 187 (quoting *People v. Blair*, 215 Ill. 2d 427, 457 (2005) (Freeman, J., dissenting, joined by McMorrow, C.J., and Kilbride, J.)). In *Whitfield*, the court found a procedural default because "it

16

would be incongruous to hold that defendant forfeited the right to bring a postconviction claim because he did not object to the circuit court's failure to admonish him." *Id.* at 188. It was undisputed in *Whitfield* that defendant was not properly and fully admonished as required by the rules. *Id.*

¶ 37    Here, however, defendant was properly admonished regarding his appeal rights under the Code as they relate to pretrial release determinations. Unlike *Whitfield*, no rule requires defendant to be admonished that the failure to raise an issue or claim of error on appeal would result in forfeiture. *People v. Robinson*, 2024 IL App (5th) 231099, ¶ 18. Here, as in *Robinson*, defendant was represented by counsel who prepared the notice of appeal. Defense counsel was present at the hearing, and therefore, was well aware of defendant's contentions related to whether he timely raised his hand during the hearing. Despite filing a notice of appeal with language beneath nearly every possible issue that could be raised in the standard form, defense counsel did *not* include any language under the last issue of "other" or provide any argument related to defendant's attempt to speak with counsel while the court was issuing its ruling. Regardless, the issue was raised in OSAD's memorandum. "[A]n appellant's notice of appeal, taken in conjunction with the appellant's memorandum, must still contain 'the relief requested and the ground for the relief requested' to avoid forfeiture." *Id.* ¶ 19. Here, because the issue was raised in the memorandum, defendant's failure to raise the issue in the notice of appeal is not dispositive of the issue of waiver.

¶ 38    Instead, the waiver determination must be based on whether the issue was properly raised and preserved before the trial court. Generally, a defendant is bound by the actions of his attorney. *People v. Kaczmarek*, 207 Ill. 2d 288, 297 (2003). Here, it is undisputed that defendant claimed the trial court failed to acknowledge his request to speak with his attorney during the hearing. However, at no time did defense counsel confirm defendant's earlier request for consultation. Nor

17

did defense counsel present any objection, either prior to or after, any of the trial court's statements related to the untimeliness of defendant's alleged action, despite the issue being raised at least three times by defendant. Finally, at no time did trial counsel ever argue that defendant was deprived of any statutory right to consult with counsel. As the issue was neither properly presented nor preserved before the trial court, we find the issue was waived.

¶ 39    OSAD next argues that denial of defendant's right to counsel could be reviewed as second-prong plain error. "Illinois's plain error rule is a narrow exception to forfeiture principles." *People v. Jackson*, 2022 IL 127256, ¶ 18. It does not "call for the review of all forfeited errors." *Id.* ¶ 19. "Under the second prong of plain-error review, '[p]rejudice to the defendant is presumed because of the importance of the right involved "*regardless* of the strength of the evidence." ' " (Emphasis in original.) *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) (quoting *People v. Herron*, 215 Ill. 2d 167, 187 (2005), quoting *People v. Blue*, 189 Ill. 2d 99, 138 (2000)). "When a defendant invokes the plain error rule, the first step in the analysis is to determine whether a clear or obvious error occurred." *Jackson*, 2022 IL 127256, ¶ 21.

¶ 40    Here, defendant claims a statutory error, not a constitutional error. We further note that defendant does not allege that he did not have counsel. Indeed, as noted by the State, and confirmed by review of the record, defendant was appointed counsel two days prior to the pretrial release hearing. As such, counsel's appointment comported with the statutory requirement that the "defendant has the right to be represented by counsel" and, if indigent, "to have counsel appointed for him or her." 725 ILCS 5/110-6.1(f)(3) (West 2022). At issue is whether the trial court comported with the remainder of that statutory requirement. That portion states,

> "Defense counsel shall be given adequate opportunity to confer with the defendant before any hearing at which conditions of release or the detention of the defendant are to be

18

considered, with an accommodation for a physical condition made to facilitate attorney/client consultation. If defense counsel needs to confer or consult with the defendant during any hearing conducted via a two-way audio-visual communication system, such consultation shall not be recorded and shall be undertaken consistent with constitutional protections." *Id.*

¶ 41   Statutory interpretation presents a question of law that is subject to *de novo* review. *People v. Smith*, 2016 IL 119659, ¶ 15. The primary objection of statutory construction is to ascertain and give effect to the true intent of legislature and all other rules are subordinate to this principle. *People v. Jamison*, 229 Ill. 2d 184, 188 (2008). "The most reliable indicator of legislative intent is the language of the statute, given it plain and ordinary meaning." *People v. Clark*, 2019 IL 122891, ¶ 20. "A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation." *Id.* "Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous." *Id.*

¶ 42   Here, the statute provides *defense counsel* an "adequate opportunity to confer with the defendant before any [pretrial release] hearing." 725 ILCS 5/110-6.1(f)(3) (West 2022). Defense counsel was appointed two days before the pretrial release hearing and no argument is presented that defendant was not given an opportunity to speak with his appointed counsel prior to the hearing. Given the argument presented by defense counsel, that included facts not found elsewhere in the record, it is clear to this court that defense counsel conferred with defendant prior to the hearing. While defendant argues that he was not provided the opportunity to confer with his counsel during the hearing, no such statutory right appears. Indeed, the statutory right solely provides for *defense counsel* to confer with defendant, not for defendant to confer with defense

19

counsel. Perhaps recognizing this anomaly, the trial court provided a protocol for defendants that would allow them to confer with counsel during the hearing.

¶ 43    The record revealed that defendant was advised by the court, prior to the hearing, that if he needed to speak to his counsel during the hearing, he was to raise his hand and speak to the court so it would be aware of the request. Defendant was placed in front of a monitor so the court and both attorneys could see him. While defendant contended that he raised his hand while the State was speaking, he conceded that he voluntarily put his hand down. The record further reveals that at no time—prior to the court issuing its ruling—did defendant ever raise his hand and advise the court of his need to speak with his counsel, which was the required protocol established by the trial court.

¶ 44    "[T]he trial court possesses the inherent authority to control its own docket and the course of litigation ***." *J.S.A. v. M.H.*, 224 Ill. 2d 182, 195 (2007). Typically, actions taken pursuant to the inherent authority are reviewed for an abuse of discretion. See *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 66 (1995); *Redelmann v. K.A. Steel Chemicals, Inc.*, 377 Ill. App. 3d 971, 978 (2007); *People v. Nepras*, 2020 IL App (2d) 180081, ¶ 20; *People v. Johnson*, 2018 IL App (1st) 140725, ¶ 58. An abuse of discretion is the most deferential standard of review. *People v. Crane*, 195 Ill. 2d 42, 50 (2001). The standard is "reserved 'for those decisions of the lower court which deserve great deference on review.' " *Id.* (quoting *People v. Coleman*, 183 Ill. 2d 366, 387 (1998)). A trial court abuses its discretion only when its decision is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the trial court's view. *People v. Garcia*, 2012 IL App (2d) 100656, ¶ 17. On review, this court does not consider whether it would have made the same decision if placed in the trial court's position; rather, we consider whether the trial court's decision was arbitrary, made without conscientious judgment, or otherwise in such a way that " 'in view of

20

all of the circumstances, the [trial] court exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted.' " *People v. Burtron*, 376 Ill. App. 3d 856, 863 (2007) (quoting *People v. Largent*, 337 Ill. App. 3d 835, 839-40 (2003)).

¶ 45    It is under this purview that we consider the trial court's decision to deny defendant the ability to confer with his counsel while it was issuing its ruling. We first note that the record reveals defendant's misconceptions about the hearing as stated in his colloquy with the court. For example, defendant contended that he put his hand down because the State was speaking and that the trial court immediately thereafter began to issue its ruling. However, the record fail to reveal such instance. Instead, the record reveals that the State made its proffer. Thereafter, defense counsel declined the opportunity to present any proffer and told the court it solely wished to present argument. The State then presented its argument which was followed by defense counsel's argument that also included a proffer. It was only after both parties were provided the opportunity to present both proffer and argument, and more specifically, following defense counsel's argument, and the trial court began issuing its ruling that defendant raised his hand allegedly for a second time.

¶ 46    While the trial court could have been clearer as to when the timeframe to request a consultation with counsel would be too late in the hearing, it is equally clear that once the evidence, proffers, and arguments were presented, and the court was issuing its ruling, the time for consultation had passed. Given that all that was left to occur was for the court to issue its ruling we cannot find the trial court's decision was an abuse of discretion. Accordingly, no clear and obvious error exists and therefore, second-prong plain error cannot be found.

¶ 47    OSAD further argues that defendant's inability to confer with his counsel was exacerbated by the fact that defendant was not present for the hearing and seems to claim such action was also

21

contrary to the statutory requirement. Again, we find no merit in either argument. First, while the statute states that the pretrial release hearings must be conducted in person, the statute provides exceptions for operational challenges that are documented and approved by the chief judge of each circuit. See 725 ILCS 5/110-6.1(f)(3.5) (West 2022). Our supreme court issued an order on August 30, 2023, regarding the conduct of hearings pursuant to the SAFE-T Act. See M.R. 31888 (eff. Aug. 30, 2023). Therein, the court provided the proper procedures required for courts that were unable to comply with the in-person requirement for pretrial hearings set forth in the statute.

¶ 48     With regard to the Sixth Judicial Circuit, Appendix D of the circuit court's local rules were amended on March 23, 2023, requiring each county to determine which hearings could be held in person and which could be held remotely. Thereafter, on September 11, 2023, Champaign County Chief Judge Rosenbaum issued Administrative Order 2023-5 regarding the implementation of the SAFE-T Act. Therein, the order found that the physical health and safety of its correctional officers and the inmates would be endangered due to operational challenges related to in-person hearings stemming from a deficiency in staff at the Champaign County Sheriff's Office, which was charged with bringing inmates to the courthouse. The order required defendants to appear remotely for pretrial release hearings until said operational challenge was sufficiently reduced so that the physical health and safety of the correctional officers and inmates would no longer be endangered. OSAD presents no argument that these administrative orders were defective and therefore, we decline to find that defendant's hearing was contrary to law.

¶ 49     Further, OSAD's argument that defendant's remote hearing exacerbated his ability to communicate with his counsel has no merit. As noted above, the statutory right is for defense counsel to confer with defendant before and during the hearing, not for defendant to confer with his counsel. 725 ILCS 5/110-6.1(f)(3) (West 2022). There was no evidence in the record that

22

defense counsel was precluded from conferring with defendant before the hearing or desired a consultation during the hearing. The trial court's protocol advised defendant as to what needed to occur if defendant wished to speak with his counsel during the hearing. No right to speak with counsel during the trial court's ruling is found in the statute. Given the current remote-only status of the pretrial release hearings in Champaign County, the trial court provided defendant with the proper procedure if defendant wished to confer with his counsel during the hearing. The protocol included raising his hand and speaking to get the court's attention. At no time prior to the court issuing its ruling—by defendant's own admission—did defendant follow the court's protocol. As noted above, we did not find the trial court's decision to disallow consultation while it was issuing its ruling to be an abuse of discretion. Therefore, we disagree that defendant's remote-only status affected his ability to confer with his attorney. As no other argument was presented, we affirm the trial court's order denying pretrial release.

¶ 50                                     III. CONCLUSION

¶ 51     For the reasons stated herein, the trial court did not err in declining defendant's request to confer with counsel while it was issuing its ruling. Therefore, we affirm the trial court's order.

¶ 52     Affirmed.