NOTICE
Decision filed 06/21/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240448-U

NOS. 5-24-0448, 5-24-0449, 5-24-0450 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | Nos. 24-CF-311, 24-CF-315, |
| | ) | 24-CF-316 |
| MICHAEL A. BARRETT, | ) | |
| | ) | Honorable Brett N. Olmstead, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justices McHaney and Sholar concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court's orders granting the State's petitions to deny pretrial release are affirmed where the trial court's findings were not against the manifest weight of the evidence and the orders denying pretrial release were not an abuse of discretion.

¶ 2   Defendant appeals the trial court's orders denying his pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons we affirm the trial court's orders.

¶ 3                                 I. BACKGROUND

¶ 4   On March 12, 2024, defendant was charged, by information, in case No. 24-CF-311, with violating an order of protection on February 20, 2024, in violation of section 12-3.4(a) of the

1

Criminal Code of 2012 (Code) (720 ILCS 5/12-3.4(a) (West 2022)), a Class 4 felony, due to a prior violation of an order of protection in case No. 98-CM-374. The State filed a verified petition to deny pretrial release the same day and defendant was given notice to appear in court on March 13, 2024. Defendant failed to appear. A warrant for his arrest was issued on March 13, 2024, and he was arrested later that day.

¶ 5       On March 14, 2024, defendant was charged, by information, in case No. 24-CF-315, with one count of aggravated domestic battery occurring on February 15, 2024, in violation of sections 12-3.2(a)(1) and 12-3.3(a-5) of the Code (*id.* §§ 12-3.2(a)(1), 12-3.3(a-5)), a Class 2 felony, in that defendant strangled the same victim in case No. 24-CF-311. Defendant was also charged with a second count of aggravated battery occurring on the same date, in violation of section 12-3.2(a)(1) of the Code (*id.* § 12-3.2(a)(1)), also a Class 2 felony, in that defendant struck the same victim in the face. The information for count II further stated defendant had four prior convictions for domestic battery in case Nos. 14-CF-228, 06-CF-1817, 04-CF-2380, and 01-CF-878. The State filed a verified petition to deny pretrial release the same day.

¶ 6       On March 14, 2024, defendant was also charged, by information, in case No. 24-CF-316, with residential burglary occurring on March 5, 2024, in violation of section 19-3 of the Code (*id.* § 19-3), a Class 1 felony. The offense was related to the residence of a different victim. The State filed a verified petition to deny pretrial release the same day.

¶ 7       Defendant's first appearance was held on March 14, 2024, in each of the three cases. At that time, counsel was appointed and the hearings on the State's petitions to deny pretrial release were continued to March 15, 2024.

¶ 8       A pretrial investigation report was filed in case No. 24-CF-316 on March 14, 2024. The report indicated that defendant was 47 years old and lived at the Champaign homeless shelter for

approximately six months. He previously lived in Rantoul, Illinois, with a friend for about two years. He had no children but had siblings in the area and advised that he could take the bus to attend future court hearings. He had some college education. He was currently unemployed but was looking for employment. He reported a history of drug abuse and requested outpatient treatment. He also reported mental health issues, including depression and anxiety, but was neither taking medication nor receiving treatment, for either. He also advised of medical issues related to his heart but had not started his medications. Defendant was currently under pretrial supervision in Champaign County case No. 23-CF-1636. He tested positive for amphetamine and methamphetamine on January 24, 2024, in drug testing taken pursuant to the pretrial supervision.

¶ 9 The Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R) classified defendant as a 13 out of 14 on the scale that equated to a level six (out of six) or 37.1% risk for recidivism if released pretrial. In addition to the charges filed in March 2024, the pretrial investigation report revealed pending charges for possession of methamphetamine less than five grams and possession of controlled substance. His criminal history included five convictions for domestic battery (2017, 2014, 2006, 2005, and 2001), three convictions for driving on a suspended license (one conviction in 2009 and two convictions in 2008), two convictions for burglary (2010 and 2002), and convictions for bad check writing (2021), phone harassment/threaten to kill (2008), possession of cannabis (2006), violation of an order of protection (1998), and theft less than $300 (1996).

¶ 10 The trial court proceeded on the State's three petitions in a consolidated hearing held on March 15, 2024. When the case was first called, the State and defense counsel advised the court that there was a waiver and defendant agreed to remain in jail. However, defendant disagreed with counsel's statement and thereafter, defense counsel requested a continuance to address the matter

3

again with defendant. The case was reset for later that afternoon. At that time, counsel confirmed that she spoke with her client. When defendant was questioned about the interaction, he stated, "Me and my Public Defender came to no agreement about anything. I ended up hanging the phone up on her, your Honor." The court advised it would proceed with the hearing.

¶ 11 The State indicated that it would be providing a proffer for each case and started with case No. 24-CF-316. It advised the court that defendant had several prior domestic battery convictions as indicated in the pretrial services report. Specifically, case Nos. 04-CF-2380, 06-CF-1817, 14-CF-228, and 17-CF-693 were all convictions for domestic battery with a prior and defendant was sentenced to the Illinois Department of Corrections (IDOC) in each of those cases. He was also sentenced to IDOC for telephone harassment in case No. 08-CF-988 and burglary in case No. 10-CF-992.

¶ 12 As to the facts underlying case No. 24-CF-316, the State proffered that on March 5, 2024, University of Illinois police responded to Phi Gamma Delta for a burglary. The victim advised that he left his backpack in the living room, and it was now gone. Video was reviewed and showed an unknown white male entering the fraternity house and grabbing two backpacks in the house. The backpacks contained a computer, mouse, and notebooks. Once the man had the backpacks, he exited the house. Officers showed the photo of the unknown man to people in the community and Champaign-Urbana Mass Transit District terminal staff recognized the person in the photo to be defendant and called police when defendant was at the terminal. Defendant was wearing the same hoodie seen in the video and admitted to entering the fraternity house. He advised police that he was forced to take the items.

¶ 13 Defense counsel stated that defendant advised her that he had bad heart issues. She further indicated that she had nothing further to add to the factual presentation.

4

¶ 14    The State argued that defendant was not in compliance with pretrial release issued in case No. 23-CF-1636, which included not committing further offenses, yet defendant continued to commit offenses. The State further argued that defendant had a very long criminal history that included numerous violent offenses as well as new violent offenses occurring during pretrial release. The State argued that defendant was dangerous for those reasons as well as his inability to comply with court orders and therefore there were no conditions the court could impose that would prevent defendant from committing new offenses. No argument was presented by defense counsel beyond defendant's heart condition.

¶ 15    The trial court found the State proved by clear and convincing evidence that the proof was evident and the presumption great that defendant committed a detainable offense, and no condition or combination of conditions would mitigate the real and present threat or defendant's willful flight. The court found defendant posed a real and present threat to the safety of the community, noting that defendant admitted going into the fraternity house. The court also noted the pretrial investigatory report that classified defendant with a VPRAI-R of 13 out of 14 and placed defendant at the highest possible risk level and "that was understandable given the extensive nature of defendant's criminal history." The court also noted that defendant was under court supervision when the charge was brought as well as additional pending charges when the incident occurred, was unemployed, and had a history of substance abuse. The court found that based on that information, defendant was a danger to the community, had a high likelihood of willful flight, and that no condition, or combination of conditions, would mitigate the danger defendant posed.

¶ 16    The State then issued its proffer regarding case No. 24-CF-315. It asked the court to again consider the IDOC sentences in the prior domestic battery cases previously mentioned. The State proffered that on February 5, 2024, that Urbana police officers responded to a domestic situation

at the U-Haul located on Philo Road. The caller advised that her mother was being held against her will by her boyfriend and that they were in a gray Toyota. When officers arrived, they observed defendant in the driver's seat and the alleged victim in the passenger seat. The victim advised police that she was in fear for her life. She was crying and visibly shaking. She told police that defendant, her boyfriend, had been in the U-Haul parking lot for over an hour. During that time, he refused to give her the keys to her vehicle or allow her to leave. He began to get physical and started poking her. He then punched her in the face and grabbed her by the mouth. He eventually placed his forearm on her neck and pressed down. The victim advised police that she was unable to breathe. The officer observed red marks and bruising around her neck consistent with being strangled. She also had bruising visible around her eye and on her temple. Defendant admitted to being in an argument with the victim and that the argument got violent. He admitted to pushing and grabbing the victim and advised that he then blacked out. Defense counsel declined the opportunity to present any proffer. However, defendant stated, "I didn't choke anybody."

¶ 17　The court found defendant was charged with a detainable offense and the State proved by clear and convincing evidence that the proof was evident and the presumption great that defendant committed a detainable offense and that no condition, or combination of conditions, would mitigate the real and present danger posed by defendant. The court noted that defendant and the victim were found in a car and there was an allegation of strangulation, which was very serious, and the victim had physical evidence on her body that was consistent with the fact that defendant attempted to restrict her airway with his arm, and she appeared to be very afraid. The court found the VPRAI-R classified defendant at the highest risk level possible, defendant was currently on community supervision at the time of his arrest and had a history of violent convictions. The court

6

found the State met its burden, granted its petition to deny pretrial release, and ordered defendant detained. A no contact order was also issued with regard to the victim.

¶ 18    As to case No. 24-CF-311, the State again asked the court to note the facts related to defendant's prior IDOC sentences as well as its presentation in case No. 24-CF-316. As to case No. 24-CF-311, the State proffered that the incident occurred on February 20, 2024, at the Marketplace Mall in Champaign, Illinois. On that date, police were dispatched to the mall regarding a reported violation of an order of protection. The underlying order of protection was issued in Champaign County case No. 24-OP-134 and involved the same victim as that seen in case No. 24-CF-316. The victim was at the mall when she began receiving text messages from defendant. The text messages referenced that defendant could see her and contained threats to her, as well as her family. The text messages were recorded on an officer's body-worn camera. The police located defendant on the east side of the mall parking lot. Defendant admitted being in the mall earlier and having knowledge of the order of protection but denied contacting the victim. Defendant was not arrested at the scene because he stated that he was having chest pains and was transported to the hospital. Defense counsel declined the opportunity to present any factual proffer.

¶ 19    The State argued that defendant had a long history of domestic violence, including numerous prior convictions and sentences at IDOC for the offense. The State argued that the text messages contained a threat to the victim and her family. Defendant admitted to knowing about the order of protection and made statements to the police officer showing his awareness that he was not to have any contact with the victim. Although defendant denied sending the text messages, the messages were recorded on the officer's body-worn camera video. The State argued that GPS would not prevent any further messaging and defendant was actually near the victim when the threats were sent and presented a viable threat of harm. The State also argued that GPS did not

7

address the fact that it occurred in a public place at the mall and that defendant was on pretrial release at the time the messages were sent. The State argued that because the pretrial release prohibited defendant from committing additional offenses, but he did so anyway, no condition of pretrial release would prevent this from happening. The State argued that defendant was a danger to the victim and others in the community and therefore should be detained. No argument was presented by defense counsel.

¶ 20   The court found the State proved by clear and convincing evidence that the proof was evident or the presumption great that defendant committed a detainable offense and that no condition or combination of conditions could mitigate the real and present threat or willful flight. The court found defendant committed an offense that was detainable and posed a real and present threat to the safety of the people of the community as well as the victim, who was protected by court order and by other orders prohibiting defendant's contact.

¶ 21   The court found the proof evident and presumption great that defendant made contact with the victim while she was at the mall by text message and was aware that he could not do this as a condition of his pretrial release. The court referred to the VPRAI-R which classified defendant at the highest possible risk, defendant's numerous pending cases, as well as his prior convictions for residential burglary and domestic abuse, noting that some charges stemmed from an incident involving the same victim, and occurred in a relatively short period of time. The court granted the State's petition to deny pretrial release and ordered defendant detained. A no contact order was also issued for the victim in this case.

¶ 22   Following the hearing, the trial court issued three orders finding defendant committed a detainable offense. In support for case No. 24-CF-316, the order stated:

"Defendant entered a residential building and stole equipment. Defendant confessed, but claimed he stole the items under duress."

The trial court's order also found defendant posed a real and present threat and no condition or combination of conditions could mitigate defendant's dangerousness. In support, the order stated, "He scores on the highest risk level in pretrial services report."

¶ 23    The second order, issued in case No. 24-CF-315, stated the following:

"February 2024—boyfriend Mr. Barrett was in a car with the victim, he refused to give her the keys, refused to let her leave, strangled victim who had injuries consistent with victim's allegations."

¶ 24    The third order, in case No. 24-CF-311, stated the following after finding defendant committed a detainable offense:

"Defendant made contact with [victim] in violation of an order of protection at Marketplace Mall, Champaign by text message. He did this while on pretrial release."

The trial court's order also found defendant posed a real and present threat and no condition or combination of conditions could mitigate defendant's dangerousness. In support, the order stated, "High risk VPRAI. Pending cases significant. History of violent offenses. Threat to a protected party, defendant admits he knows."

¶ 25    Defendant timely appealed each of the orders. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023). Upon motion by the State, this court consolidated the orders for purposes of appeal and disposition.[1]

---

[1]Pursuant to Illinois Supreme Court Rule 604(h)(5) (eff. Dec. 7, 2023), our decision in this case was due on or before June 20, 2024, absent a finding of good cause for extending the deadline. Based on the high volume of appeals under the Act currently under the court's consideration, as well as the complexity of issues and the lack of precedential authority, we find there to be good cause for extending the deadline.

¶ 26                                    II. ANALYSIS

¶ 27    Pretrial release—including the conditions related thereto—is governed by statute. See Pub. Act 101-652, § 10-255 (eff. Jan. 1, 2023); Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2022). In order to detain a defendant, the State has the burden to prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and (3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e).

¶ 28    In considering whether the defendant poses a real and present threat to the safety of any person or the community, *i.e.*, making a determination of "dangerousness," the trial court may consider evidence or testimony concerning factors that include, but are not limited to, (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code of Criminal Procedure of 1963 (*id.* § 110-5). *Id.* § 110-6.1(g).

10

¶ 29    To set appropriate conditions of pretrial release, the trial court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.*

¶ 30    Our standard of review of pretrial release determinations is twofold. The trial court's factual findings are reviewed under the manifest weight of the evidence standard. *People v. Swan*, 2023 IL App (5th) 230766, ¶ 12. " 'A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " *Id.* (quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)). We review the trial court's ultimate determination regarding the denial of pretrial release for an abuse of discretion. *Id.* ¶ 11. "An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the trial court." *Id.*; see also *People v. Heineman*, 2023 IL 127854, ¶ 59. "[I]n reviewing the circuit court's ruling for abuse of discretion, we will not substitute our judgment for that of the circuit court, 'merely because we would have balanced the appropriate factors differently.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 15 (quoting *People v. Cox*, 82 Ill. 2d 268, 280 (1980)).

11

¶ 31    All three of defendant's notices of appeal request reversal of the trial court's orders denying him pretrial release. The three notices of appeal provided additional language under each of the eight potential issues that could be raised in the standard notice of appeal form.[2] Of those eight, two contained "checked" boxes next to the issues. We shall only consider the "checked issues." See *People v. Sims*, 2024 IL App (5th) 240034-U, ¶ 20. The "checked" issues for all three notices included: (1) whether the State failed to meet its burden of proving that no condition or combination of conditions could mitigate defendant's dangerousness; and (2) whether the court erred in determining that no condition, or combination of conditions, would reasonably ensure defendant's appearance for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor. The majority of the typewritten language underneath either checked issue failed to contain argument specific to the cases or merely provided language related to the burden of proof required for each issue.

¶ 32    On May 6, 2024, defendant's counsel on appeal, the Office of the State Appellate Defender, filed a Rule 604(h) notice filed in lieu of Rule 604(h)(7) memorandum in each case. The notices stated they were timely filed, this court had jurisdiction of each case, and no memorandum would be filed.

¶ 33    The State filed a Rule 604(h) memorandum on May 24, 2024. Therein, the State argued that defendant waived all of his arguments raised on appeal by failing to provide any argument before the trial court. In the alternative, the State argues that the evidence supported the trial court's findings and requests affirmation of the orders denying pretrial release.

---

[2]This court previously addressed this situation. See *People v. Davis*, 2024 IL App (5th) 240120, ¶¶ 18-26. We again remind trial counsel of the ethical obligations regarding frivolous appeals and the failure to properly delineate the issues for consideration on appeal.

¶ 34    As noted above, each of defendant's notices of appeal contained two issues for consideration. The second issue relates solely to revocation of pretrial release. See 725 ILCS 5/110-6 (West 2022) (dealing solely with revocation or modification of pretrial release conditions as well as sanctions related to violation of pretrial conditions). Our review of the record reveals this issue is inapplicable for all three of the cases on appeal. Accordingly, we find this issue has no merit for any of the cases appealed.

¶ 35    The remaining issue for each of the cases on appeal contends the State failed to show by clear and convincing evidence that no condition, or combination of conditions, was sufficient to mitigate defendant's dangerousness. In support, in addition to addressing the burden of proof, the typewritten language in all three cases stated, "In this case, the State failed to meet its burden because there are conditions as set for[th] in 725 ILCS 5/110-10(b) which would mitigate the threat and/or the willful flight risk." As noted above, the State argued that defendant waived this issue by failing to present it to the trial court. In support, the State cites *People v. Freeman*, 2024 IL App (5th) 240167-U, ¶ 38, for the proposition that issues not properly presented or preserved before the trial court are waived. We find the State's reliance on *Freeman* unwarranted.

¶ 36    In *Freeman*, defendant's argument on appeal was based on his claim that the trial court erred in failing to allow him to speak with his counsel during the hearing. *Id.* As defendant's counsel never raised the issue or objected to the trial court's actions, we found the issue was forfeited. *Id.* Here, the issue is the sufficiency of the State's evidence. "[W]hen a defendant makes a challenge to the sufficiency of the evidence, his or her claim is not subject to the waiver rule and may be raised for the first time on direct appeal." *People v. Woods*, 214 Ill. 2d 455, 470 (2005) (citing *People v. Enoch*, 122 Ill. 2d 176, 190 (1988)). Accordingly, the issue is not forfeited.

13

¶ 37　Typically, when considering the sufficiency of the evidence, "the reviewing court must view the evidence 'in the light most favorable to the prosecution.' " *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This means the reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *Id.* In this case, the question becomes, " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found' " (emphasis in original) (*id.* at 278 (quoting *Jackson*, 443 U.S. at 319)) that the State proved by clear and convincing evidence that no condition, or combination of conditions, would mitigate defendant's dangerousness. Each decision is based on its own articulable facts. See 725 ILCS 5/110-6.1(h)(1) (West 2022).

¶ 38　As stated above, in determining which conditions of pretrial release, if any, would reasonably ensure the appearance of the defendant, the safety of persons and the community, and the likelihood of defendant's compliance with terms of pretrial release, the statute provides factors for the trial court's consideration. See *id.* § 110-5(a). These include, *inter alia*, (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the real and present threat to the safety of any person or persons or the community based on the articulable facts of the case that would be posed by the defendant's release. *Id.* Many of these are similar to those listed in section 110-6.1(g) that address a defendant's dangerousness. See *id.* § 110-6.1(g). As such, there is no legal basis to minimize or ignore the State's argument addressing the dangerousness factors when also considering whether it proved that no conditions exist that would mitigate defendant's dangerousness.

¶ 39   As to case No. 24-CF-316, the State argued that defendant was not in compliance with pretrial release conditions issued in Champaign County case No. 23-CF-1636, which included a condition that prohibited defendant from committing further offenses. The State also noted that defendant had a very long criminal history that included numerous violent offenses as well as new violent offenses that occurred during pretrial release. The State argued that defendant was dangerous for those reasons as well as his inability to comply with court orders and therefore there were no conditions the court could impose that would prevent defendant from committing new offenses.

¶ 40   The trial court found defendant posed a real and present threat to the safety of the community. The court also noted the pretrial investigatory report that classified defendant with a VPRAI-R of 13 out of 14 and placed defendant at the highest possible risk level and that was understandable given the extensive nature of defendant's criminal history and the fact that he was on court supervision when the charge was brought. The court also noted the additional pending charges when the incident occurred. The court found that, based on that information, no condition or combination of conditions would mitigate the danger defendant posed.

¶ 41   As to case No. 24-CF-315, the State argued that defendant was previously incarcerated for his convictions in the prior domestic battery cases. It then proffered that defendant held the victim against her will at the U-Haul location by refusing to give the victim her keys or allowing her to leave. The State further proffered that the victim advised the police that she was strangled, beaten, and feared for her life. The police noted that the victim was crying, visibly shaking, and had had red marks and bruising on her neck, temple, and throat consistent with the victim's account of the incident.

¶ 42    The trial court found that the VPRAI-R classified defendant at the highest risk level possible. It further found defendant was currently on community supervision at the time of his arrest and had a history of violent convictions. Based on this information, the court found that no condition, or combination of conditions, would mitigate defendant's risk to the victim.

¶ 43    Finally, as to case No. 24-CF-311, the State again argued that defendant had a long history of domestic violence, including numerous prior convictions and sentences at IDOC for the offenses. The State also noted the threatening content of the text message to the victim and her family. The State argued that GPS would not prevent any further messaging and defendant was actually near the victim when the threats were sent and presented a viable threat of harm. The State also argued that GPS did not address the fact that it occurred in a public place at the mall and that defendant was on pretrial release at the time the message was sent that prohibited from committing additional offenses and admitted knowing that he was prohibited from contacting the victim.

¶ 44    In response, the trial court found that defendant made contact with the victim while she was at the mall by text message and was aware that he was precluded from such action as a condition of his pretrial release. The court again referred to the VPRAI-R which classified defendant at the highest possible risk, defendant's numerous pending cases, as well as his prior convictions for residential burglary and domestic abuse, noting that charges stemmed from an incident involving the same victim, and occurred in a relatively short period of time. Therefore, the court found that no condition or combination of conditions would mitigate defendant's dangerousness to both the victim and the community.

¶ 45    Here, as to all three cases, we note that the conditions of release found in section 110-10 (725 ILCS 5/110-10 (West 2022)) are based on a defendant's compliance with court ordered conditions. Given that defendant's history reveals three separate instances that involved violation

16

of pretrial release conditions, we cannot find that the State's reliance on defendant's violation of his pretrial supervision conditions was unwarranted. See *id.* § 110-6(g)(8) (addressing the status of a defendant at the time the incident occurred). Similarly, the State's reliance on the VPRAI-R and defendant's criminal history was proper. See *id.* § 110-6(g)(2) (addressing a defendant's history and personal characteristics). Accordingly, when considered in conjunction with the separate details related to each incident, we cannot find that the State failed to prove, by clear and convincing evidence, that no condition or combination of conditions would mitigate defendant's dangerousness for any of the three cases.

¶ 46     We cannot find that the trial court's findings in each case that no conditions would mitigate defendant's dangerousness were against the manifest weight of the evidence. Therefore, we hold that the trial court's ultimate dispositions, denying pretrial release in all three cases, were not abuses of discretion.

¶ 47                                III. CONCLUSION

¶ 48     For the reasons stated herein, the trial court findings in each case were not against the manifest weight of the evidence and its ultimate disposition for each case was not an abuse of discretion. Therefore, we affirm the trial court's orders.

¶ 49     Affirmed.